**Charles WHITTAKER, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

**Crane Rental Company, Inc., and PMA Group, Intervenors.**

**No. 94–AA–749.**

District of Columbia Court of Appeals.

Argued Nov. 28, 1995.

Decided Dec. 18, 1995.

Mark L. Schaffer, Washington, DC, for petitioner.

Charles L. Reischel, Deputy Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time, filed a statement in lieu of brief, for respondent.

Christopher C. Fogleman, Rockville, MD, for intervenors.

Before FERREN, TERRY, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

As we have had to do from time to time in past cases,[1] we must remand this claim for workers' compensation to the Department of Employment Services (DOES) because the hearing examiner, in denying petitioner benefits, misapprehended the statutory presumption favoring causation. *See* D.C.Code § 36–321(1) (1993). In concluding that the presumption "has no present applicability," the examiner appears to have confused the compensability of petitioner's injury to a knee cartilage (which the employer admitted was work-related, thereby persuading the examiner that a presumption of causation was no longer needed) with the compensability of petitioner's disability resulting from arthritis in the knee which he claimed was aggravated by the work-related injury.

### I. The Proceedings

Petitioner received temporary total disability benefits from the date of his injury, November 1, 1988, until their termination on July 4, 1991. After benefits were terminated, he filed a claim with DOES seeking a retroactive award of temporary total disabili-

---

1. *E.g., Baker v. District of Columbia Dep't of Employment Servs.,* 611 A.2d 548 (D.C.1992); *Ferreira v. District of Columbia Dep't of Employment Servs.,* 531 A.2d 651 (D.C.1987).

ty benefits, with interest, beginning with the date of their termination, as well the indefinite continuation of benefits and the resumption of vocational rehabilitation.[2] After an evidentiary hearing on February 3, 1992, a hearing examiner denied petitioner's claim in a Compensation Order dated January 14, 1994. Petitioner applied to the Director of DOES for review, but the Director failed to issue a final decision within forty-five days of the date of the application. The Compensation Order thus became a final decision for purposes of review by this court. D.C.Code § 36–322(b)(2)–(3).

## II. The Facts

On November 1, 1988, petitioner was stepping across a stack of pallet boards at a job site when his foot became caught in a piece of wire mesh, causing him to fall to the ground with his right leg buckled beneath him. The accident caused tears of the back portions of the medial and lateral menisci of petitioner's right knee.[3] These tears were superimposed upon pre-existing (though non-symptomatic) degenerative arthritis in petitioner's right knee. All of the damaged cartilage was successfully removed during two arthroscopic surgeries conducted in 1988 and 1989, but at the same time petitioner's arthritis grew worse, to a point where the hearing examiner found, and the medical experts for the parties agreed, that petitioner was disabled from his usual employment as a crane operator. The examiner concluded, however, that "even though claimant's symptoms remain, the superimposition of the effects of the work injury have been alleviated, and claimant's present medical condition is the result of his degenerative arthritis rather than either the November 1, 1988 work injury or the surgery to correct the effects thereof." In other words, petitioner had failed to "show that his continuing loss of wages [was] the result of the *exacerbation* of his pre-existent condition rather than ... a result of

the natural progression of the [arthritic] condition" (emphasis in original).

## III. Discussion

■ D.C.Code § 36–321(1) provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of evidence to the contrary: (1) That the claim comes within the provisions of this chapter...." As this court has explained, "The statutory presumption operates to establish a causal connection between the disability and the work-related event." *Baker, supra* note 1, 611 A.2d at 550. In *Ferreira, supra* note 1, the court elaborated:

In order to benefit from the presumption, a claimant needs to make some "initial demonstration" of the employment-connection of the disability.... The initial demonstration consists in providing some evidence of the existence of two "basic facts": a death or a disability and a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the death or disability.... The presumption then operates to establish a causal connection between the disability and the work-related event, activity, or requirement.

531 A.2d at 655 (citations omitted) (emphasis in original). *Accord, Parodi v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 524, 526 (D.C.1989). We further explained in *Parodi:*

Once the presumption is triggered, the burden of production shifts to the employer to set forth "substantial evidence" showing that the death or disability is not work-related.... Absent employer evidence "specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event," the compensation claim will be deemed to fall within the purview of the statute.

---

2. An issue still unresolved by the hearing examiner is who bore responsibility for the apparent termination of petitioner's vocational rehabilitation. Whether that issue needs to be resolved depends on the outcome of the further proceedings we direct on the issue of causation.

3. A meniscus is "[a] crescent-shaped structure, especially a crescent-shaped piece of cartilage or gristle upon the end of a bone entering in the formation of a joint; the semilunar cartilage of the knee joint." 2 J.E. Schmidt, *Attorneys' Dictionary of Medicine* M–82 (1992).

*Id.* at 526 (quoting *Ferreira, supra* note 1, 531 A.2d at 655 & n. 5).

■ At the evidentiary hearing, petitioner submitted the deposition testimony of his treating physician and medical expert, Dr. Michael Cassidy, to support a finding that the torn cartilage in his right knee, conceded to have been caused by the work-related fall, had aggravated a pre-existing arthritic condition in his knee.[4] In considering this evidence, the hearing examiner acknowledged and applied the well-settled principle that "[t]he aggravation of a pre-existing condition may justify compensation." *Baker, supra* note 1, 611 A.2d at 550; *accord, Wheatley v. Adler,* 132 U.S.App.D.C. 177, 182, 407 F.2d 307, 312 (1968) (en banc) (construing predecessor statute). But, importantly, the examiner declined to give petitioner the benefit of the statutory presumption of causation in answering the "dispositive" question of "the medical relationship, if any, between claimant's present symptomology [sic] and the conceded work-related injury of November 1, 1988." The examiner did so for the sole reason that "the compensability of claimant's November 1, 1988 injury has been neither raised nor challenged." That is, apparently because the employer never disputed that the torn knee cartilage stemmed from the employment, the examiner thought that this removed from the analysis the presumption of a causal link between the disability—arthritis aggravated by the injury—and the accident. It did not. Our decision in *Baker, supra* note 1, made that point sufficiently clear.

In *Baker,* the petitioner, a charter bus driver, sustained an injury to his lower back when the steering wheel of the bus he was driving locked while he was making a left turn. It was uncontested that this injury arose out of and in the course of the petitioner's employment as a charter bus driver. 611 A.2d at 550. Medical examinations revealed that this work injury had aggravated pre-existing osteoarthritis of the petitioner's spine, and a DOES hearing examiner ultimately concluded that the arthritis rendered the petitioner disabled from continued employment as a bus driver. *Id.* at 549–50. The examiner also concluded, however, that the disability was not compensable because, though the work-related injury had aggravated the arthritic condition, the disability was causally related solely to the pre-existing arthritis. *Id.* at 550. After the DOES Director affirmed, petitioner argued to this court in part that the examiner had failed to apply the statutory presumption of compensability. *Id.* We agreed, and remanded for further proceedings "[b]ecause the record nowhere indicate[d] that DOES considered the statutory presumption of compensability for work-related injuries." *Id.* The presumption, it was clear, applied to the causal relation not just between the original injury and the employment but between the current disabling condition and the employment.

In defending the examiner's refusal to apply the presumption here, intervenors contend that two types of causation must be distinguished: "causation as it relates to a determination of whether an accidental injury arose out of and in the course of employment" and "causation as it relates to whether a particular medical condition is a result of the compensable work injury." They argue that the statutory presumption applies only to the former. We find no meaning in that distinction. Under this jurisdiction's "aggravation rule," there is no question that "a particular medical condition [that] is a result of the compensable work injury" may itself be compensable and thus covered by the presumption. Where there is a dispute (as here) about whether the disabling aggravated condition—the "medical condition" as intervenors put it—is causally related to or "arose out of" the claimant's employment, the presumption applies and is triggered if the

---

4. Doctor Cassidy testified that it was a reasonable medical probability that "[t]he arthritis may have been there but he was kind of put over the edge by the falling he took at work, the tearing of cartilage." Under cross-examination, Dr. Cassidy further explained:

   The problem is that by removing the cartilages [as had been required in subsequent surgery],

you remove some of the stability of the knee and some of the shock absorbency of the knee, and frequently when you do that, it will advance the progression of degenerative arthritis, because you have removed some of the stabilization of the knee.

claimant produces "some evidence" of the two basic facts described in *Ferreira.*

Our decisions thus require the examiner to view the causal relation between a present disability and a job-related injury through the lens, as it were, of the statutory presumption, *unless* the employer has rebutted the presumption by "evidence 'specific and comprehensive enough to sever the potential connection'" between the two. *Parodi,* 560 A.2d at 526 (citation omitted). *Dunston v. District of Columbia Dep't of Employment Servs.,* 509 A.2d 109 (D.C.1986), cited by the examiner, is not to the contrary, for the only issue in that case was whether the claimant had been totally and permanently disabled, and the court made it clear that the presumption "has no application to a determination of the *nature and extent* of petitioner's injury." *Id.* at 111 (emphasis added); *see also id.* ("Petitioner ... is not entitled to a presumption that his injury has left him totally and permanently disabled").[5] As in *Baker* and *Ferreira,* therefore, we must remand the case to DOES for correct application of the statutory presumption.

Petitioner argues that, as in *Parodi, supra,* remand is unnecessary because this court can conclude as a matter of law that the presumption was unrebutted. But *Parodi* was an exceptional case in which "the employer's own medical evidence ... not only failed to rebut the presumption but [was] consistent with, if not more favorable to petitioner, than [petitioner's surgeon's] letter" establishing a potential causal relationship. *Parodi,* 560 A.2d at 526. In this case, the employer presented the deposition testimony of Dr. Herbert E. Lane, Jr., who had examined petitioner repeatedly, to the effect that any aggravation petitioner may have sustained as a result of the work-related injury had subsided as of September 4, 1990. The examiner must determine whether this testimony, together with anything else in the record, was sufficient to dispel the effect of the statutory presumption. In this regard, however, we make one observation. The presumption of compensability cannot be overcome merely "by some isolated evidence." *Wheatley,* 132 U.S.App.D.C. at 184, 407 F.2d at 314. Here the examiner, in concluding that petitioner (without benefit of the statutory presumption) had failed to prove causation, relied heavily on a note of petitioner's own expert, Dr. Cassidy, dated November 2, 1989, stating that petitioner's remaining symptoms "were all due to arthritis." But, in isolation, this note may simply describe the source of petitioner's pain and say nothing about the relationship between the arthritis and the work-related injury—on which both Drs. Cassidy and Lane testified at length and were cross-examined in deposition. The examiner's decision whether the presumption has been overcome must rest primarily upon evaluation of this testimony.

*Reversed and remanded.*

---

**5.** *Stewart v. District of Columbia Dep't of Employment Servs.,* 606 A.2d 1350 (D.C.1992), cited by intervenors and the examiner, is inapposite because, while the court made no mention of the statutory presumption, it was obvious from the court's discussion of the evidence that the employer had rebutted the presumption. *See id.* at 1352–53.