*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-416

SINOBIA NEWELL-BRINKLEY, APPELLANT,

V.

DIANA HAINES WALTON, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-7966-10)

(Hon. Gregory E. Jackson, Trial Judge)

(Submitted December 5, 2012                    Decided January 16, 2014)

*Jonathan L. Gould* was on the brief for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*:  Officer Newell-Brinkley of the Metropolitan Police Department ("MPD") injured her back while working.  As a result, MPD permitted her to take sick leave that was not charged against her leave balance ("non-chargeable sick leave").  Before Officer Newell-Brinkley returned to work

full time from her on-the-job injury, MPD began to charge her sick leave against her leave balance, because her blood pressure was high and MPD concluded that her blood-pressure problem was not work-related. Officer Newell-Brinkley challenged MPD's decision, seeking both reimbursement for previously charged sick leave and additional non-chargeable sick leave going forward. After an adverse determination by MPD, she filed a petition for review in the Superior Court. That petition was denied, and she appealed.[1] We remand to the Superior Court with directions to remand to MPD.

## I.

The following facts are undisputed. Officer Newell-Brinkley sustained an on-the-job injury to her back in September 2009. She was treated for the injury at

---

[1] After this case was submitted, a question arose as to whether MPD's decision was properly reviewable in the first instance in the Superior Court, or whether instead Officer Newell-Brinkley should have sought review of MPD's decision in this court. After we directed the parties to file supplemental briefs addressing that question, the parties agreed that Officer Newell-Brinkley had properly sought review in the first instance in the Superior Court. We subsequently held this case in abeyance pending the decision in *Nunnally v. District of Columbia Metro. Police Dep't*, No. 11-CV-609, 2013 WL 6500208 (D.C. Dec. 12, 2013), which presented a similar question. The court in *Nunnally* has now held that a police officer's challenge to MPD's denial of non-chargeable sick leave was reviewable in the Superior Court in the first instance. *Id.* at 4-13. We therefore conclude that Officer Newell-Brinkley correctly sought review in the Superior Court.

the Police and Fire Clinic. During this treatment, clinic doctors noted that Officer Newell-Brinkley had high blood-pressure readings and asked her to consult her private doctor about the issue. In February 2010, after a clinic doctor determined that Officer Newell-Brinkley's back pain was improving, Officer Newell-Brinkley was placed on half-time, limited duty. Five days later, she reported experiencing pain at work, and her supervisor sent her to the Police and Fire Clinic. At the clinic, Officer Newell-Brinkley's blood-pressure reading was very high. The clinic doctor placed Officer Newell-Brinkley on full-time sick leave until her blood-pressure issue was addressed. After that, MPD began charging Officer Newell-Brinkley for sick leave.

The parties dispute the cause of the high blood-pressure readings. Officer Newell-Brinkley contends that the high blood-pressure readings were caused by a combination of her back pain, medications she took for the pain, and stress arising from the pain. MPD asserts that Officer-Newell Brinkley's high blood-pressure readings were not caused by her back injury.

When she discovered that she was being charged for sick leave, Officer Newell-Brinkley filed a supplemental worker's compensation claim. The Director of MPD's Medical Services Branch denied that claim, concluding that although

Officer Newell-Brinkley's high blood-pressure readings were caused by the back injury, Officer Newell-Brinkley nevertheless was not entitled to non-chargeable sick leave, because she had not been diagnosed with "the disease 'High Blood Pressure.'" Officer Newell-Brinkley then appealed to the MPD Medical Claims Appeals Hearing Branch, which concluded that Officer Newell-Brinkley had not proven that there was a causal relationship between the high blood-pressure readings and her back injury. The Hearing Officer also concluded that Officer Newell-Brinkley was not entitled to additional non-chargeable sick leave for her claimed back pain.

The Superior Court denied Officer Newell-Brinkley's petition for review of MPD's decision, finding that Officer Newell-Brinkley was not entitled to non-chargeable sick leave for her high blood pressure, because she did not make out a prima facie case that her on-the-job back injury had caused her high blood pressure and because substantial evidence supported MPD's conclusion that there was no causal relationship between her back injury and her high blood pressure. The Superior Court also found that Officer Newell-Brinkley had not preserved the alternative argument that her back injury entitled her to additional non-chargeable sick leave.

**II.**

**A.**

Officer-Newell Brinkley's claim to non-chargeable sick leave arises under D.C. Code § 5-633 (a) (2012 Repl.), which provides MPD officers with a right to non-chargeable sick leave if they are unable to work "due to a performance-of-duty injury or illness." *See also* D.C. Code § 1-612.03 (j) (2012 Repl.) ("Sick leave may not be charged to the account of a uniformed member of the Metropolitan Police Department . . . for an absence due to injury or illness resulting from the performance of duty."). Section 5-633 (a), which was enacted as Section 623 of the Fire and Police Medical Leave and Limited Duty Amendment Act of 2004, D.C. Law 15-194, 51 D.C. Reg. 9406, 9413, 9416 (Oct. 22, 2004), does not define the phrase "performance-of-duty injury or illness." The parties appear to assume that the phrase should be given the same interpretation that this court has given to essentially indistinguishable language in various provisions of the Police and Firefighters' Retirement and Disability Act ("PFRDA"), D.C. Code § 5-701 et seq. (2012 Repl.). *See, e.g.*, D.C. Code §§ 5-707, 5-708, 5-708.01, 5-709, 5-710 (2012

Repl.).[2] We agree with the parties' assumption, and therefore construe § 5-633 (a) in light of our prior decisions interpreting the PFRDA.

The PFRDA "serves as the worker's compensation plan for the District's police and firefighters. . . . Such remedial legislation is typically given liberal construction by the courts to effectuate its humanitarian purposes, with exemptions and exceptions narrowly construed and doubts resolved in favor of the employee." *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 389 (D.C. 2012) (footnotes and internal quotation marks omitted). *See also, e.g.*, *Blohm v. Tobriner*, 122 U.S. App. D.C. 2, 3, 350 F.2d 785, 786 (1965) (per curiam) ("[P]olicemen must of necessity engage in hazardous work as a part of their regular duties, and Congress has amply manifested a distaste for the resolution of doubts against them in the administration of laws passed for their protection.").

---

[2] We asked the parties to provide supplemental briefs on the question whether the PFRDA had been repealed as to officers appointed after January 1, 1980, by D.C. Code § 1-632.03 (a)(1)(P) (2012 Repl.). The parties filed supplemental briefs agreeing that the PFRDA, as subsequently amended by Congress and the D.C. Council, remains in effect. We accept the agreement of the parties on that point.

This court has interpreted the PFRDA as affording claimants the benefit of a variety of presumptions or burden-shifting rules. *See, e.g.*, *Lamphier v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 698 A.2d 1027, 1032 (D.C. 1997) (applying burden-shifting framework for firefighter seeking disability retirement benefits based on claim that on-duty injuries aggravated preexisting condition); *Baumgartner v. Police & Firemen's Ret. & Relief Bd.*, 527 A.2d 313, 315-16 (D.C. 1987) (applying burden-shifting framework for police officer seeking disability retirement benefits based on claim of on-duty injury).[3]

Most relevant for current purposes, the court has held that once a claimant under the PFRDA establishes a prima facie case that "he or she was injured in an on-duty incident, the burden of proceeding shifts, and it is incumbent upon the government to adduce substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury." *Pierce v. Police & Firefighters'*

---

[3] Similar presumptions and burden-shifting doctrines apply under the District of Columbia Workers' Compensation Act ("WCA"), D.C. Code § 32-1501 et seq. (2012 Repl.), and under the federal Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. (2006), which used to govern workers' compensation claims in the District of Columbia. *See, e.g.*, D.C. Code § 32-1521(1) (2012 Repl.) (presumption of compensability under WCA); 33 U.S.C. § 920 (a) (2006) (presumption of compensability under LHWCA); *Vargo v. Barry*, 667 A.2d 98, 101 (D.C. 1995) ("[T]he [PFRDA] was commonly understood to serve a purpose similar to that of a workers' compensation statute."); *Triplett v. George Hyman Constr.*, 565 A.2d 83, 84-85 (D.C. 1989) (LHWCA covered private employees in the District of Columbia from 1928 through 1980).

*Ret. & Relief Bd.*, 882 A.2d 199, 204 (D.C. 2005) (internal quotation marks omitted). "[T]he evidentiary burden to prove a *prima facie* case is not onerous; there merely needs to be a sufficient basis to permit a reasonable inference that the disabling injury was incurred in the performance of duty." *Id.* at 206 (citation omitted). If the government rebuts the claimant's prima facie case, the claimant must carry the ultimate burden of persuasion. *See Croskey v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 596 A.2d 988, 991-92 (D.C. 1991) ("The ultimate burden of persuasion remained with Croskey."); *cf. Washington Post v. District of Columbia Dep't of Emp't Servs.*, 852 A.2d 909, 911 (D.C. 2004) (under WCA, once employer rebuts statutory presumption, "[t]he burden then reverts to the claimant to prove [causation] by a preponderance of the evidence").

**B.**

We turn first to Officer Newell-Brinkley's challenge to the denial of non-chargeable sick leave based on her high blood pressure. The parties dispute three issues: whether Officer Newell-Brinkley's claim that her high blood pressure was caused by her work-related back injury should have been analyzed under a burden-shifting framework; whether Officer Newell-Brinkley presented a prima facie case that her high blood pressure was work-related; and whether MPD introduced

substantial evidence to rebut any such prima facie case. We decide only the first issue.

## 1.

MPD does not dispute that it failed to apply burden-shifting principles to Officer Newell-Brinkley's claim that her work-related injury caused her high blood pressure. Rather, MPD contends that a 2004 amendment to the PFRDA displaced those principles. The provision at issue is titled "Processing claims of injuries allegedly sustained within the performance of duty." Fire and Police Medical Leave and Limited Duty Amendment Act of 2004, D.C. Law 15-194, § 602 (b), 51 D.C. Reg. 9406, 9413-14 (Oct. 22, 2004) (codified at D.C. Code § 5-708.01 (b) (2012 Repl.)). In relevant part that provision reads:

> The Director shall determine, based on a review of the unit commander's report on the cause of the injury or illness and after consultation with the Police and Fire Clinic physicians on the nature of the injury or illness, whether a member's injury or illness was sustained by the member in the performance of duty within 30 calendar days of a claim being reported to the Department. If the Director fails to meet the 30-day deadline, there shall be a rebuttable presumption that the member's injury or illness was sustained in the performance of duty. Until the presumption is rebutted by a finding by the Director that the injury or illness was

> not sustained in the performance of duty, the member's Department shall be responsible for all treatment costs and disability compensation pay.

We are not persuaded by MPD's argument that this provision displaces the burden-shifting framework this court has generally applied to claims arising under the PFRDA. The 2004 amendment does not explicitly displace that framework. Rather, it creates an additional, narrower presumption for the benefit of claimants. Specifically, the amendment provides that if MPD's Director of Medical Services fails to rule on a claim for benefits within thirty days after the claim is reported to MPD, then MPD is responsible for all treatment costs and disability compensation unless and until the Director finds that the claimed injury was not work-related. There is no reason to suppose that, by providing claimants with that additional protection from the consequences of administrative delay, the District of Columbia Council intended sub silentio to deprive claimants of the benefit of favorable burden-shifting doctrines that are long-standing and well settled under the PFRDA. To the contrary, it is highly unlikely that the Council would have altered preexisting law in so fundamental a way implicitly rather than explicitly. *Cf. Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

It is even more unlikely that the Council would have done so by enacting a provision benefitting claimants.

The legislative history of the 2004 amendment confirms that the Council did not intend to displace preexisting protections for claimants under the PFRDA. There is no mention in the legislative history of any intent to deny claimants the benefit of other presumptions or burden-shifting principles. Rather, the legislative history demonstrates that the amendment was intended solely to address the problems created for claimants by administrative delay in making benefit determinations under the PFRDA. *See* D.C. Council, Report on Bill 15-32 at 17 (Dec. 9, 2003) (statement of purpose and effect of legislation; amendment "addresses the issue of managers not making determinations on whether the employee's injury was a [performance-of-duty] injury . . . while the employee [uses] his or her sick leave and pays for medical services"); *id.* at 25 (Committee on Judiciary criticizes MPD for delay in "determining whether sick leave is duty-related"); *id.* at 29 (Fraternal Order of Police supports amendment); *id.* at 40-41 (police representative criticizes MPD's delays in making on-the-job injury determinations: "When the police department finally [decided] that the injury was duty related it agreed to pay outstanding medical bills and back pay. This does not

make the subject officer[s] 'whole[.'] [Their] credit is ruined, their homes may be gone and their faith in the police department is forever shattered.").

In sum, we conclude that the 2004 amendment created an additional protection for claimants under the PFRDA. It did not displace preexisting law providing claimants with the benefit of favorable burden-shifting principles. It follows that MPD committed legal error in failing to apply those principles to Officer Newell-Brinkley's claim. *See generally, e.g.*, *Alexander v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 783 A.2d 155, 157 (D.C. 2001) (court may reverse if agency "decision is grounded on a mistaken legal premise").

**2.**

As previously noted, the parties dispute the proper resolution of the case under the applicable burden-shifting framework. For several reasons, we decline to fully resolve that dispute at this juncture. First, because it did not analyze Officer Newell-Brinkley's claims within the applicable burden-shifting framework, MPD did not explicitly decide whether Officer Newell-Brinkley presented a prima facie case or whether substantial evidence existed to rebut any such case. This court generally "cannot uphold an agency decision on grounds

other than those actually relied upon by the agency." *District of Columbia Dep't of Mental Health v. District of Columbia Dep't of Emp't Servs.*, 15 A.3d 692, 697 (D.C. 2011) (internal quotation marks omitted). Second, we are not confident that MPD's ultimate rejection of Officer Newell-Brinkley's claim in this case was unaffected by MPD's failure to view that claim through the "lens" of the applicable burden-shifting framework. *Cf., e.g.*, *Waugh v. District of Columbia Dep't of Emp't Servs.*, 786 A.2d 595, 599 (D.C. 2001) (failure to apply presumption of compensability under WCA "may skew the calculus applicable to this type of proceeding"). Third, the Hearing Officer inaccurately stated that Officer Newell-Brinkley presented "no evidence" of a causal relationship between her work-related injury and her high blood pressure. To the contrary, Officer Newell-Brinkley presented letters from her physician of over ten years stating that she had not had high blood pressure before the back injury and that her high blood-pressure readings were caused by her back pain, the medication for her back pain, and stress that Officer Newell-Brinkley experienced after her back injury.

Under the circumstances, we deem it appropriate for MPD to reconsider Officer Newell-Brinkley's blood-pressure claim under the proper burden-shifting framework. *Cf., e.g.*, *Waugh*, 786 A.2d at 601 (remanding workers'

compensation claim under WCA where agency failed to consider claim "through the lens . . . of the statutory presumption" in favor of compensability) (internal quotation marks omitted); *Baker v. District of Columbia Dep't of Emp't Servs.*, 611 A.2d 548, 550-51 (D.C. 1992) (same; "The presumption is the starting point," and "[o]n remand, [the agency] must apply it first . . . .").

This case comes to us through the Superior Court, rather than directly from the agency, but that does not alter our conclusion. *See, e.g.*, *Hahn v. University of District of Columbia*, 789 A.2d 1252, 1256 (D.C. 2002) ("We review the affirmance of an administrative action by the trial court in the same way that we would examine the agency's ruling if it came before us on direct review from the agency."). Although Officer Newell-Brinkley argued in the Superior Court that MPD had failed to apply the applicable burden-shifting framework, the Superior Court did not address that contention. Rather, the Superior Court concluded that Officer Newell-Brinkley did not establish a prima facie case and that there was substantial evidence suggesting that Officer Newell-Brinkley's high blood pressure was not work-related. We are doubtful about the Superior Court's conclusion that Officer Newell-Brinkley did not establish a prima facie case, given the medical evidence that Officer Newell-Brinkley introduced and the principle that the obligation of establishing a prima facie case is "not onerous." *Pierce*, 882 A.2d at

206. In any event, as we have already concluded, Officer Newell-Brinkley's blood-pressure claim should be reconsidered under the applicable burden-shifting framework and decided in the first instance by MPD. We therefore remand to the Superior Court with directions to remand to MPD. *See generally, e.g.*, *1303 Clifton St., LLC v. District of Columbia*, 39 A.3d 25, 36 (D.C. 2012) (remanding to Superior Court with instructions to remand to agency); *Murchison v. District of Columbia Dep't of Pub. Works*, 813 A.2d 203, 206 (D.C. 2002) (per curiam) (same).

In so remanding the case, we express no opinion on the ultimate merit of Officer Newell-Brinkley's claim that her high blood pressure was work-related and entitled her to non-chargeable sick leave. *Cf., e.g.*, *Waugh*, 786 A.2d at 601 n.6 (expressing similar caveat).

## C.

We next address Officer Newell-Brinkley's argument that, even if her high blood pressure is not work-related, she was in any event erroneously denied non-chargeable sick leave relating to her back injury. The Superior Court concluded that Officer Newell-Brinkley forfeited that argument. In explaining that

conclusion, the Superior Court indicated that Officer Newell-Brinkley did not raise her back-injury claim before MPD's Medical Services Branch; that Officer Newell-Brinkley raised that claim for the first time at the May 11, 2010, evidentiary hearing before the Hearing Officer; and that MPD "only ruled on [Officer Newell-Brinkley's] high blood pressure claim." MPD defends the Superior Court's forfeiture ruling on appeal, contending that Officer Newell-Brinkley did not adequately present her back-injury argument to the Hearing Officer and that the Hearing Officer did not decide that claim.[4] We conclude otherwise on both points.

---

[4] The parties dispute whether Officer Newell-Brinkley adequately raised her back-injury argument during the initial proceedings before MPD's Medical Services Branch. We do not find it necessary to resolve this dispute. The trial court did not state, and MPD does not contend, that any such failure would by itself require that Officer Newell-Brinkley's claim be treated as forfeited, even if the claim was subsequently presented to the Hearing Officer and decided on the merits by the Hearing Officer. It is doubtful in any event that such a contention would have merit, given both the informality of proceedings under the PFRDA and the remedial purpose of workers' compensation laws. *Cf. Ferreira v. District of Columbia Dep't of Emp't Servs.*, 531 A.2d 651, 658 (D.C. 1987) ("The adjective law of workmen's compensation, like the substantive, takes its tone from the beneficent and remedial character of the legislation. Procedure is generally summary and informal. . . . The whole idea is to get away from the cumbersome technicalities of pleading, and to reach a right decision by the shortest and quickest possible route.") (quoting 3 Arthur Larson, *Workmen's Compensation Law* § 77A.10 at 15-1 to 15-2 (1986)). Moreover, such a contention would run up against the principle that an agency's decision of an issue on the merits may constitute waiver by the agency of a claim that the party failed to raise the issue at earlier stages of the administrative process. *See, e.g., Lin v. Attorney Gen. of U.S.*, 543 F.3d 114, 123-25 (3d Cir. 2008) (citing cases).

First, Officer Newell-Brinkley explicitly raised at oral argument before the Hearing Examiner the claim that she in any event had incorrectly been denied non-chargeable sick leave relating to her original back injury. Second, the Hearing Officer's order addressed the argument on the merits, describing the argument as "valid," but rejecting it on the basis that "it is logical to deduce that the addition of the unexplained elevated blood pressure readings thwarted any attempts to continue the member in any type of physical therapy sessions." We therefore cannot accept MPD's argument that Officer Newell-Brinkley's back-injury claim was forfeited.

Because it viewed the argument as not having been properly preserved, the Superior Court did not address on the merits Officer Newell-Brinkley's argument that her back injury entitled her to non-chargeable sick leave. We choose not to decide that issue in the first instance, "mindful that we are a court of review, not [of] first view . . . ." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1043 n.4 (9th Cir. 2011) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). Although in other circumstances we might remand that issue for resolution by the Superior Court, we think it preferable in the unusual circumstances of this case for that issue to be remanded for further consideration

by MPD. We are reluctant to unduly complicate the procedural posture of the case by remanding one issue for resolution by the Superior Court and one issue for resolution by MPD. We are particularly reluctant given that, depending on the outcome of remand proceedings before MPD, there might be no need to resolve the question whether Officer Newell-Brinkley's original back injury entitled her to some non-chargeable sick leave.

Finally, we also view remand to MPD as appropriate because we have doubts about MPD's analysis of whether Officer Newell-Brinkley was erroneously denied non-chargeable sick leave relating to her initial back injury. The Hearing Officer stated that Officer Newell-Brinkley's high blood pressure had prevented Officer Newell-Brinkley from completing the physical therapy prescribed to treat her back pain. Apparently for that reason, the Hearing Officer concluded that Officer Newell-Brinkley's back injury was no longer compensable. The Hearing Officer did not explain, however, why Officer Newell-Brinkley would not be entitled to compensation for her back injury until she had recuperated from that injury, even if her recuperation from that injury were delayed by a problem with high blood pressure that was not itself work-related. *Cf. Brown v. Jefferson*, 451 A.2d 74, 76-77 (D.C. 1982) (under § 4-525 (1980 Supp.) of PFRDA (now codified at D.C. Code § 5-707 (2012 Repl.)), officers are entitled to temporary disability

benefits for on-the-job injuries that aggravate preexisting conditions).  Moreover, even under the Hearing Officer's analysis, it is unclear why MPD placed Officer Newell-Brinkley on full-time chargeable sick leave, instead of half-time chargeable sick leave and half-time non-chargeable sick leave, between March 1, 2010, and April 2, 2010, and it is also unclear on the current record how MPD treated Officer Newell-Brinkley's sick leave after April 2, 2010.

For the foregoing reasons, we remand the case to the Superior Court with directions to remand to MPD for further proceedings.

*So ordered.*